**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JERMAINE L. LEVY, | ) |
| | ) |
| | ) CASE NO. 1:06-CV-237 |
| Petitioner, | ) |
| | ) JUDGE CHRISTOPHER A. BOYKO |
| v. | ) |
| | ) |
| STATE OF OHIO, *et al.*, | ) |
| | ) **MEMORANDUM OF OPINION** |
| Respondent. | ) |

**CHRISTOPHER A. BOYKO.J.:**

     This matter is before the Court on Petitioner, Jermaine L. Levy's, ("Levy"), Petition for Writ of Habeas Corpus (ECF # 1) pursuant to 28 U.S.C. § 2254 and an Amended Petition on April 19, 2006. (ECF # 8-2.)  For the following reasons, the Court ACCEPTS and ADOPTS the Magistrate Judge's Report and Recommendation and denies Petitioner's Petition.  Levy's Motion for Reconsideration (ECF # 44), which was attached to his Objections to Magistrate Report and Recommendation (Doc. No. 43), and subsequently filed as a formal Motion for Reconsideration, is actually nothing more than Objections to the Report and Recommendation, is also denied.

## **FACTS**

The following is a factual synopsis of Petitioner's claims.  The Magistrate Judge's Report and Recommendation adopted and incorporated, provides a more complete and detailed discussion of the facts.  After a jury trial  in Cuyahoga County, Ohio Court of Common Pleas, during which Levy represented himself, the jury found Levy guilty of one count of Attempting to Break Out of Jail While Detained for a Felony of the First or Second Degree and one count of Forgery. The trial court sentenced Levy to concurrent sentences for an aggregate of three years in prison. Levy has not begun serving his sentence, as he is currently serving a prison term of 240 months in federal prison for multiple convictions.

On September 6, 2002, Levy, through counsel Neil Rubin, filed an untimely Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court"). On September 30, 2002, the state appellate court dismissed the Notice of Appeal due to "failure to file a praecipe in violation of Local App. R. 9(B)."  On July 3, 2003, this time acting *pro se*, Levy filed an untimely Notice of Appeal with the state appellate court. On July 10, 2003, the state appellate court again dismissed the Notice of Appeal because of failure to file a praecipe.  On August 8, 2003, Levy, *pro se*, filed a Motion for Delayed Direct Appeal and Notice of Appeal. On September 24, 2003, the state appellate court granted Levy's Motion, vacated its prior dismissal, and appointed Brett Mancino as appellate counsel for Levy. On direct appeal, Levy's appellate counsel presented six assignments of error for review.  On August 26, 2004, the state appellate court found no merit to Levy's assignments of error and affirmed the judgment.   On September 7, 2004, Levy filed an Application for Reconsideration and a Motion to Certify

a Conflict.  The state appellate court denied both on October 5, 2004.            On January 5, 2005, Levy, *pro se*, filed a Notice of Appeal and Motion for Delayed  Direct Appeal with the Supreme Court of Ohio.  On February 16, 2005, the Supreme Court of Ohio granted leave to file a Delayed Direct Appeal and ordered Levy to file his Memorandum in Support of Jurisdiction within thirty days.  On March 22, 2005, the Supreme Court of Ohio dismissed the appeal because Levy had failed to file his Memorandum in Support of Jurisdiction.  On January 13, 2006, Levy, *pro se*, filed a second Notice of Appeal and Motion for Delayed Direct Appeal with the Supreme Court of Ohio from the state appellate court's direct appeal decision of October 5, 2004.  On March 8, 2006, the Supreme Court of Ohio, without explanation, denied leave to file a delayed direct appeal.  On December 12, 2005, Levy, *pro se*, filed a Delayed Application to Reopen with the Court of Appeals, Cuyahoga County, Ohio, pursuant to Ohio Appellate Rule 26(B) ("Rule 26(B)").  On January 12, 2006, Levy, *pro se*, filed an Amended Application to Reopen Direct Appeal with the Court of Appeals, Cuyahoga County, Ohio, and raised the additional claim that his appellate counsel was ineffective for failing to file a Rule 26(B) application as Levy requested.  On January 17, 2006, the state appellate court, without opinion, denied the original Application to Reopen.

On January 20, 2006, the state appellate court, without opinion, denied the Amended Application to Reopen.  On February 22, 2006, Levy, *pro se*, filed a Notice of Appeal and Memorandum of Jurisdiction with the Supreme Court of Ohio challenging the state appellate court's January 17, 2006 denial of his original Application to Reopen his Direct Appeal.  On May 10, 2006, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.  Prior to the state appellate court's

3

September 24, 2003 order granting Levy's Motion for Delayed Direct Appeal and appointing attorney Mancino as appellate counsel, Levy, *pro se*, filed a Petition for Post-Conviction relief pursuant to O.R.C. 2953.21 *et seq.* on August 29, 2003. Levy argued he had received ineffective assistance of appellate counsel because his initial appellate counsel failed to timely perfect his right to appeal. On November 28, 2003, the trial court denied Levy's petition as moot. The trial court found that issues related to appellate counsel are not cognizable in a post-conviction petition and further noted that Levy had a direct appeal pending before the state appellate court and was represented by newly appointed counsel.

On January 31, 2006, Levy, *pro se*, filed a Petition for Writ of Habeas Corpus. On May 31, 2006, the Court granted Levy's Motion to Amend his Petition. The asserted grounds for relief are summarized as follows:

> **GROUND ONE**: Appellate counsel was ineffective for: (1) failing to raise the issue of whether Levy's waiver of his right to trial counsel was knowing, intelligent and voluntary; and (2) failing to raise the issue of whether the prosecutor constructively amended the indictment during the presentation of his case in chief and again during summation.
>
> **GROUND TWO**: Petitioner was denied the right to counsel in violation of the Fifth, Sixth, and Fourteenth Amendments where Petitioner was not informed of the nature and consequences of the crimes charged so as to enable him to make an informed decision.

4

> **GROUND THREE**: Petitioner was denied his right to a public trial when the trial court, over Petitioner's objection, ejected his children from the proceedings.
>
> **GROUND FOUR**: The trial court violated Petitioner's rights because the deadline to try him on the charges had expired under the Federal Interstate Agreement on Detainers.
>
> **GROUND FIVE**: Ohio's appellate and post-conviction procedures are inadequate to test the legality of Petitioner's detention due to a government created impediment.

The Ohio Court of Appeals summarized the facts underlying Levy's conviction as follows:

> [*P9] On April 30, 2001, the Ohio Cuyahoga County Prosecutor's Office lodged a detainer against Jermaine Levy with the Warden at the Lewisburg Penitentiary in Pennsylvania. Ohio Codified the Federal Interstate Agreement on Detainers (I.A.D.) in R.C. 2963.30.... The prosecutor charged Levy with attempting to escape and forgery while in the custody of the Cuyahoga County jail on an unrelated corruption charge. Before we develop the facts relative to those charges, it is important to focus on the facts relative to Levy's claim that under Ohio's I.A.D., the time had expired to bring him to trial on those charges.
>
> [*P10] In substance, Article III and IV of R.C. 2963.30 speak to the right of a detainee to have a speedy trial. Article III defines the procedure when the

5

detainee initiates the process for trial and sets the speedy trial time at one hundred eighty days. The detainee must serve notice on both the prosecutor and the court, which must contain a certification from the warden stating the terms of the detainee's incarceration. Article IV sets forth the procedure to be followed when the prosecutor initiates the detainer procedure. Under Article IV, the time for trial starts to run one hundred twenty days after the party arrives in the requesting state.

[*P11] Levy had been transferred to the Cuyahoga County [jail] from Lewisburg Penitentiary on the unrelated charge of corruption, when he attempted to escape the Cuyahoga County jail by assuming the identity of another inmate. Levy returned to Lewisburg before his indictment on the escape and forgery charge; consequently, he knew of the possibility of those criminal charges.

[*P12] On February 8, 2001, and April 16, 2001, Levy attempted to invoke his rights under the detainer laws by filing his final disposition request with the Warden. The Warden failed to respond to the February request but did inform him on April 19, 2001 that no detainer existed for him from Ohio.

[*P13] The Cuyahoga County Grand Jury indicted Levy on March 30, 2001. On April 16, 2001, Levy filed a pleading with the Clerk of Cuyahoga County Common Pleas Court invoking his speedy trial rights under both R.C. 2963.30 and R.C. 2941.401. We note at the outset that R.C. 2941.401 does not apply; Levy was not

in a correctional institution of this state when he invoked his speedy trial rights. We read R.C. 2941.401 to apply when the prisoner is in prison in Ohio and seeks to have untried charges resolved in Ohio.

[*P14] The clerk time-stamped Levy's request on April 18, 2001. Levy's pleading does not show proof of service to the prosecutor's office; although Levy testified at his speedy trial hearing that he served the prosecutor's office on April 8, 2001, which the prosecutor denies receiving.

[*P15] On April 30, 2001, the prosecutor's office filed an I.A.D. request for temporary custody of Levy with the Warden at Lewisburg. On May 10, 2001, Levy declined to complete the form; he informed the Warden that he did not want to jeopardize his speedy trial rights. However, on July 26, 2001, he did complete the form.

[*P16] On September 12, 2001, Levy was returned to Ohio. On December 5, 2001, he waived his speedy trial rights. On December 18, 2001, Levy filed his motion to dismiss the indictment under R.C. 2963.30, which the trial court denied. His trial for escape and forgery began on February 11, 2002.

[*P17] At the trial, the State's first witness, corrections officer Andrea Averyheart, testified at 11:00 p.m., he collected the inmates designated for release, which included the release of James Evans. He called the name James

Evans and a male responded. The inmate identified himself as James Evans and responded to several personal questions. Averyheart stated the photograph on the floor card did not match the inmate who responded. The inmate then responded to Averyheart that the photograph was not him.

[*P18] Averyheart took him to an area for him to change into his civilian clothing. After the inmate dressed, Averyheart inquired further asking more personal questions. The inmate could not respond to information such as Evans' father's name or whether he had sisters or brothers.

[*P19] Averyheart requested verification from Scientific Investigation Unit (SIU) and SIU responded the card belonged to James Evans. Averyheart notified his corporal that an escape had been attempted.

[*P20] Averyheart testified that ultimately the inmate was identified as Jermaine L. Levy. The State called several other witnesses that confirmed Averyheart's testimony.

[*P21] Detective Dave Schilling investigated the case and learned that co-defendants Landon Nicholson and Willie Harris had secured the bond for the release of a James Evans. Schilling also discovered that Landon Nicholson had visited Levy before the incident.

[*P22] The State rested, and Levy called three witnesses who had no knowledge of the events. Levy testified while waiting to be transported to Lewisburg, an officer approached him and told him to get dressed. After getting dressed, a card was shown to him and he was asked if he knew the person in the picture. Averyheart then took him downstairs and placed him in the dressing room while he went to an adjacent room. When he returned, Averyheart told Officer Doniver that Levy said his name was James Evans. Levy denied telling Averyheart his name was James Evans; he told him earlier the picture on the card was not him. Afterwards, the supervisors were called; they placed him in a holding cell. Days later he was transported back to the federal prison.

[*P23] Levy also stated he wore a size forty-four inch waist pants, while the person he is accused of impersonating is about 170-180 pounds and wore a thirty-four inch waist pants. Additionally, he stated he had never met Landon Nicholson, but heard he was a paralegal. He stated he might have come in contact with Nicholson while seeking legal assistance about his case.

[*P24] Finally, Levy stated the officers are trying to cover up for almost releasing the wrong person, a person who had several high profile cases.

[*P25] At the end of trial, the jury returned verdicts of guilty on both counts of the indictment. The trial court sentenced Levy to three years in prison on the escape charge and one year on the forgery count. Both sentences were to be

served concurrently. However, the instant sentences were to be served consecutively to the sentences he was then serving. Levy now appeals.

*State v. Levy*, 2004 Ohio App. LEXIS 4088, 2004-Ohio-4489 (Ohio Ct. App. 2004).

On June 2, 2006, this court referred Petitioner's Petition to the Magistrate Judge for a Report and Recommendation. The Magistrate Judge issued her Report and Recommendation on July 9, 2007. Petitioner timely filed his Objections to the Report and Recommendation on July 23, 2007, and a Motion for Reconsideration to the Magistrate Judge's Report and Recommendation on the same day.

## **STANDARD OF REVIEW**

When a federal habeas claim has been adjudicated by the state courts, 28 U.S.C. § 2254(d)(1) provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." Further, a federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). The appropriate measure of whether or not a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-411.

Pursuant to 28 U.S.C. § 2254(e)(1), findings of fact made by the state court are

presumed correct, rebuttable only by clear and convincing evidence to the contrary. *McAdoo v. Elo*, 365 F. 3d 487, 493-494 (6th Cir. 2004). Finally, Rule 8(b)(4) of the Rules Governing §2254 states:

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify in whole or in part any findings or recommendations made by the magistrate.

## **ANALYSIS**

The Magistrate Judge determined Petitioner's claims in Ground One lack merit and that Petitioner was fully aware of the charges against him; his waiver of his right to counsel was made freely, unequivocally, and voluntarily. Levy had been represented by counsel in previous matters, therefore his familiarity with the criminal justice system belie any claim that he did not know the disadvantages of proceeding without counsel when he opted to do so. His utilization of pretrial procedures and preparation also illustrate that he had extensive knowledge of the criminal justice system. In his Objections to Magistrate Report and Recommendation, Petitioner states "when the trial court opened the proceedings and announced to the Court that he had just been informed that Levy was seeking to fire appointed counsel, Levy immediately interjected and informed the Court that he was not seeking to fire appointed counsel, it was his impression that he had been proceeding all along pro-se." As the Magistrate Judge determined, the record demonstrated that Levy clearly and unequivocally opted to represent himself. Under these circumstances, Levy's appellate counsel did not act so unreasonably as to deprive him of his right to appellate counsel when he failed to raise this argument on appeal. Moreover,

11

even if appellate counsel acted unreasonably by failing to raise this argument, appellate counsel was not ineffective because there is not a reasonable probability that inclusion of the issue would have changed the result of the appeal. As to the second part of ground one, the Magistrate Judge determined the trial court denied the prosecution's motion to amend the indictment and the indictment was never actually amended. Therefore, Petitioner's claims in ground one are denied.

The Magistrate Judge determined the claims in ground two are procedurally defaulted because Levy never raised a claim pertaining to the validity of his trial counsel waiver on direct appeal and would be barred from raising it now on the grounds of *res judicata.* Therefore, Levy has defaulted his claims as contained in ground two.

The Magistrate Judge determined the claims in grounds three and four are procedurally defaulted because Levy's claimed errors were never reviewed on their merits by the Supreme Court of Ohio, and *res judicata* would bar Levy from attempting to raise those issues again. Therefore, Levy has defaulted his claims as contained in grounds three and four of his petition.

In his fifth ground for relief, the Magistrate Judge determined that Levy's petition does not state a constitutional violation but rather attempts to justify Levy's failure to comply with applicable state procedures. Levy's argument does not allege a cognizable claim, as he does not argue that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. Therefore, ground five of Levy's petition cannot serve as the basis for the granting of a Writ of Habeas Corpus.

For the foregoing reasons, the Court **ADOPTS AND ACCEPTS** the Magistrate

Judge's well-reasoned Report and Recommendation. Therefore, Petitioner's Petition under 28 U.S.C §2254 for Writ of Habeas Corpus by a Person in State Custody is dismissed.

The Court finds an appeal from this decision could not be taken in good faith. 28 U.S.C. § 1915 (a) (3). Since Petitioner has not made a substantial showing of a denial of a constitutional right directly related to his conviction or custody, the Court declines to issue a certificate of appealability. 28 U.S.C. § 2253 (c)(2); Fed. R. App. P. 22(b).

    IT IS SO ORDERED.


February 6, 2008                                  S/Christopher A. Boyko
                                               CHRISTOPHER A.BOYKO
                                               United States District Judge